Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence MODIFIES IN PART and AFFIRMS IN PART the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement, as:
 STIPULATIONS
1. The parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and this claim. The parties and this claim are subject to the Workers' Compensation Act.
2. An employer-employee relationship existed between defendant and plaintiff at all relevant times herein.
3. Defendant was a duly qualified self-insured at all relevant times herein with Helsman-Management Services, Inc. acting as the servicing agent.
***********
 EVIDENTIARY RULING
Defendant objected to and noted a timely exception to the Deputy Commissioner's 5 August 1997 Order requiring defendant to provide plaintiff with discovery entered at a hearing that was held on 28 July 1997. Specifically, defendant was ordered to provide plaintiff the notes made by David R. Masters, General Manager of Personnel, Safety and Environmental Affairs, no later than 5:00 P.M. on 6 August 1997. Defendant contended that the notes which were the subject of the Deputy Commissioner's order were privileged because they were written pursuant to a request of defendant's counsel in anticipation of litigation threatened by plaintiff distinct from plaintiff's claim for workers' compensation. Defendant willfully failed and refused to comply with said order although Bob Walters, the new company president, gathered the information that defendant was ordered to produce.
Deputy Commissioner Glenn scheduled a hearing to be held after the workers' compensation case was completed for consideration of possible sanctions against defendant for failure to comply with his order for discovery. Defendant petitioned Deputy Commissioner Glenn to recuse himself from the hearing regarding sanctions. Deputy Commissioner Glenn declined to recuse himself and ordered sanctions against defendant in the form of attorney's fees for its failure to timely comply with his 5 August 1997 order.
The Full Commission SUSTAINS the 5 August 1997 Order by the Deputy Commissioner requiring that defendant provide plaintiff with discovery. Additionally, the Full Commission finds that the Deputy Commissioner's decision not to recuse himself was appropriate. However, the Full Commission has modified the Deputy Commissioner's decision to clarify the reasoning and legal basis for the imposition of attorney's fees as a sanction against defendant.
***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was a fifty year old female at the time of the hearing before the Deputy Commissioner. Plaintiff began working for defendant in 1988 and worked as a Customer Service Manager prior to the Fall of 1993. In October 1993, plaintiff was transferred to the position of Marketing Assistant. In this position, plaintiff demonstrated strong administrative skills and won several awards for which she had been recommended by Frederick B. Star, who was defendant's President and CEO at that time. In January 1993 plaintiff was awarded the TFI and Armstrong World Industries Award for Excellence for the 1992 working year.
2. In the spring of 1993, defendant hired Ms. Sharon Bosworth as General Manager of Marketing and Design. Ms. Bosworth was hired for her ability to design new lines of upholstered furniture. The new designs that Ms. Bosworth produced for defendant resulted in a substantial increase in defendant's income.
3. Shortly after Ms. Bosworth was hired, defendant determined that she did not possess adequate administrative skills and did not demonstrate any desire to develop them. Administrative skills were needed in conjunction with the creative work Ms. Bosworth performed to efficiently distribute her designs to other departments and so that new lines of furniture could be manufactured in a timely fashion. To resolve this dilemma, defendant assigned plaintiff as Ms. Bosworth's assistant to perform administrative duties.
4. Prior to her reassignment, plaintiff had reported directly to Mr. Bob Walters, the new company president. Mr. Walters assured plaintiff that if the transfer was not successful plaintiff would be moved to another position and that her employment with defendant was secure. Plaintiff was also informed of the importance to defendant's success in the furniture industry of having Ms. Bosworth's designs distributed to the other departments in a timely fashion.
5. In her new position, plaintiff was required to obtain specifications of new designs from Ms. Bosworth after which plaintiff was to distribute them to the necessary departments. Initially plaintiff and Ms. Bosworth worked well together, and plaintiff had no difficulties in obtaining the information she needed from Ms. Bosworth. Subsequently, for reasons unknown to plaintiff, Ms. Bosworth stopped providing her with the information concerning the new designs. Plaintiff unsuccessfully sought to obtain the needed information by leaving memos and telephone messages with Ms. Bosworth.
6. As time progressed, the relationship between Ms. Bosworth and plaintiff deteriorated. In her dealings with plaintiff, Ms. Bosworth's tone was short and harsh. Ms. Bosworth cursed at plaintiff and berated her by calling plaintiff "dumb" and "stupid." Additionally, Ms. Bosworth instructed the employees supposedly supervised by plaintiff to report to her (Ms. Bosworth) rather than to plaintiff because plaintiff did not know what she was doing.
7. Due to Ms. Bosworth behavior, plaintiff grew frustrated and worried over the inability to adequately perform the requirements of her job. Plaintiff's job became more stressful and her repeated attempts to resolve the problems with Ms. Bosworth were not successful. In contrast, plaintiff had managed the stress associated with her former position with defendant and was able to resolve prior problems.
8. Ms. Jan Comer, defendants human resources manager, was informed by plaintiff of the problems with Ms. Bosworth. Ms. Comer was played a tape of a conversation between plaintiff and Ms. Bosworth. Having heard the contents of this taped conversation, Ms. Comer corroborated plaintiff's testimony that Ms. Bosworth cursed at plaintiff, had called her a "bitch," and that Ms. Bosworth was insulting in her tone. Based upon these and other workplace examples, Ms. Comer was of the opinion that Ms. Bosworth was emotionally unstable.
10. Ms. Comer played the tape in question for Mr. Walters and discussed with him the need for professional counseling for Ms. Bosworth. Plaintiff also personally informed Mr. Walters of the problems with Ms. Bosworth. Plaintiff was informed by Mr. Walters that any workplace issues or problems would be resolved and that her employment with defendant was not in jeopardy. Mr. Walters further indicated to plaintiff that he would discuss the situation with Ms. Bosworth. However, Mr. Walters' discussions with Ms. Bosworth regarding plaintiff's concerns only worsened the situation, resulting in increased pressure and stress on plaintiff. Additionally, Mr. Walters promoted Ms. Bosworth to vice-president on 27 May 1994 and Ms. Comer was fired after expressing her views concerning Ms. Bosworth's conduct.
11. Mr. Ricky E. Coffee, defendant's manufacturing manager, also experienced difficulty with Ms. Bosworth and in obtaining information needed to remain on schedule. Ms. Bosworth would neither give him the specifications for the furniture which she designed, nor would she respond to his messages. When Mr. Coffee complained about Ms. Bosworth to management, he was also fired by defendant.
12. At the time of the hearing before the Deputy Commissioner, Ms. Susan C. Balcer was employed by defendant as the marketing supervisor. Ms. Balcer had worked for plaintiff in the customer service department prior to plaintiff's transfer. Shortly after the April furniture market in 1994, plaintiff informed Ms. Balcer that she was fearful of losing her job. Ms. Balcer observed the working relationship between plaintiff and Ms. Bosworth from the time Ms. Bosworth was hired until plaintiff was fired on 22 June 1994. As time passed, Ms. Balcer observed growing tension between Ms. Bosworth and plaintiff. Through her observations, Ms. Balcer corroborated plaintiff's testimony that Ms. Bosworth cursed at plaintiff and that Ms. Bosworth was harsh and threatening in her interactions with plaintiff.
13. Mr. Bill Kilgore and Mr. Mitch Scott, vice-presidents with defendant, acknowledged that plaintiff was assigned to Ms. Bosworth to improve the gathering of information and to perform administrative duties that should have been performed by Ms. Bosworth. Both of these company vice-presidents confirmed that plaintiff was unable to perform her duties due to the manner in which Ms. Bosworth treated her and the lack of support from Mr. Walters.
14. As the result of the situation at work and her relationship with Ms. Bosworth, plaintiff began to experience symptoms of depression in the spring of 1994. Plaintiff felt as though she was losing her mind and informed others, including management, that "this situation was killing her." Plaintiff felt demeaned, embarrassed, humiliated, worthless and believed that Ms. Bosworth was attempting to get rid of her. Prior to her assignment with Ms. Bosworth, plaintiff had not experienced these types of psychological symptoms.
15. Additionally, as the result of the situation at work and her relationship with Ms. Bosworth, plaintiff began to experience adverse physical ailments in the spring of 1994. Plaintiff experienced chronic pain and fatigue, severe headaches, extreme joint and muscle pain, chemical allergies and problems with sleeping. Prior to her assignment with Ms. Bosworth, plaintiff had not experienced these types of adverse physical ailments.
16. As the result of her physical problems, plaintiff sought treatment on 18 May 1994 from Dr. Wodecki, a specialist in internal medicine and rheumatology. Dr. Wodecki examined plaintiff and diagnosed her as having fibromyalgia.
17. Following her initial examination by Dr. Wodecki, plaintiff continued working for defendant until 22 June 1994, when she was fired. On 24 June 1994, plaintiff returned to Dr. Wodecki who hospitalized plaintiff due to a severe flare-up of her fibromyalgia and severe depression. Dr. Wodecki also referred plaintiff to Dr. Patricia Hill, a psychiatrist.
18. Dr. Wodecki opined that depression can cause or significantly aggravate fibromyalgia. As for plaintiff's condition, Dr. Wodecki opined that her depression was caused by her employment related stress and that her fibromyalgia was significantly aggravated by her depression.
19. Dr. Patricia Hill first examined plaintiff on 30 June 1994. Following her examination of plaintiff, Dr. Hill found that plaintiff was grossly impaired by major depression. Dr. Hill opined that plaintiff's depression was related to severe workplace stress associated with her relationship with Ms. Bosworth and to her termination by defendant. Dr. Hill further opined that plaintiff's employment with defendant exposed her to an increased risk of developing major depression as compared to members of the general public not so employed. Dr. Hill recommended ongoing treatment for plaintiff's depression.
20. The employment related stress experienced by plaintiff as Ms. Bosworth's assistant was not the normal type of stress that an employee would experience in a position with defendant or any other employer. Plaintiff's employment with defendant caused the development of her depression and exposed her to an increased risk of developing severe depression as compared to the general public not so employed.
21. Because plaintiff's fibromyalgia was caused or significantly aggravated by her depression, it is causally related to her employment with defendant.
22. Dr. Wodecki has not released plaintiff to return to work since 24 June 1994, although he has contacted defendant, without receiving a response, to ascertain whether there were any suitable positions available for plaintiff.
23. As a result of her depression and fibromyalgia, plaintiff has been unable to earn wages in her former position with defendant or in any other employment for the period of 23 June 1994 through the present and continuing.
24. Plaintiff's salary and average weekly wage at the time of her termination on 22 June 1994 yields the maximum compensation rate for 1994, $466.00 per week.
25. Deputy Commissioner Glenn filed an Order Compelling Discovery on 5 August 1997 which defendant failed to comply with in violation of Rule 605. Accordingly, pursuant to Rule 802, appropriate sanctions may be ordered by the Commission, including the award of attorney's fees.
***********
Based on the foregoing findings of fact and stipulations, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff's salary and average weekly wage at the time of her termination on 22 June 1994 yields the maximum compensation rate for 1994, $466.00 per week. N.C. Gen. Stat. § 97-2(5).
2. Plaintiff's employment with defendant caused her depression and exposed her to an increased risk of developing this condition as compared to members of the general public not so employed. N.C. Gen. Stat. § 97-53(13). Because plaintiff's fibromyalgia was caused or significantly aggravated by her depression, it was also caused by her employment with defendant. Id.; N.C. Gen. Stat. § 97-2(6).
3. As the result of her depression and fibromyalgia, plaintiff is entitled have to be paid by defendant temporary total disability compensation at the rate of $466.00 per week for the period of 23 June 1994 through the present and continuing until such time as she returns to work or further order of the Commission. N.C. Gen. Stat. § 97-29.
4. As the result of her depression and fibromyalgia, plaintiff is entitled to have defendant pay all medical expenses incurred or to be incurred. N.C. Gen. Stat. § 97-2(19); N.C. Gen. Stat. §97-25.
5. Pursuant to Industrial Commission Rule 802, defendant's failure to comply with Deputy Commissioner Glenn's 5 August 1997 Order Compelling Discovery subjects it to the imposition of sanctions. Accordingly, defendant is assessed an additional attorney's fee in the amount of $2,585.00 for the time and effort expended by counsel for plaintiff on this issue. N.C. R. Civ. P. 37.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to attorney's fees hereinafter awarded, defendant shall pay to plaintiff temporary total disability benefits at the rate of $466.00 per week for the period of 23 June 1994, through the present and continuing until such time as plaintiff returns to work or further order of the Commission. All accrued compensation shall be paid in one lump sum.
2. Defendant shall pay for all medical expenses incurred or to be incurred by plaintiff as a result of her depression and fibromyalgia conditions.
3. An attorney's fee of twenty-five percent (25%) of the compensation due plaintiff herein is hereby approved for counsel for plaintiff. From the amounts of compensation which has accrued, this fee shall be deducted and directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check thereafter.
4. As the result of its violation of the 5 August 1997 Discovery Order by Deputy Commissioner Glenn, defendant shall pay as a sanction the sum of $2,585.00 in attorney's fees to counsel for plaintiff for the time and effort expended on this issue. This attorney's fee imposed as a sanction is in addition to the attorney's fee approved as a percentage of the compensation awarded to plaintiff.
5. Defendant shall pay all costs due this Commission.
S/_____________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER